UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KATHLEEN GALLIGAN, MARY SCHROEDER, ROSE ANN MCKEAN,** and, **REGINA H. BOONE,**

    Plaintiffs,

vs.

Case No. 17-cv-
Hon.
Mag.

**DETROIT FREE PRESS,** *a Michigan corporation*, and **GANNETT CO., INC.,** *a foreign corporation*,

    Defendants.

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Irina L. Vaynerman (0396759)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/Fax (248) 258-7881
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Kathleen Galligan, Mary Schroeder, Rose Ann McKean, and Regina H. Boone, (hereinafter, "Plaintiffs") by their attorneys Deborah Gordon Law**,** complains against Defendants as follows:

**Jurisdiction and Parties**

1. This is an action for violations of the Equal Pay Act and the Elliott-Larsen Civil Rights Act, arising out of Plaintiffs' employment relationship with Defendants.

2. Plaintiffs' claims arise out of Defendants discriminating against Plaintiffs on the basis of their gender by providing them with less compensation than similarly situated male employees performing the same or similar duties.

3. Plaintiff Kathleen Galligan (hereinafter "Plaintiff Galligan" or "Galligan") is a resident of Michigan and resides in the Eastern District of Michigan.

4. Plaintiff Mary Schroeder (hereinafter "Plaintiff Schroeder" or "Schroeder") is a resident of Michigan and resides in the Eastern District of Michigan.

5. Plaintiff Rose Ann McKean (hereinafter "Plaintiff McKean" or "McKean") is a resident of Michigan and resides in the Eastern District of Michigan.

6. Plaintiff Regina H. Boone (hereinafter "Plaintiff Boone" or "Boone") is a resident of Michigan and resides in the Eastern District of Michigan.

7. Defendant Detroit Free Press (hereinafter "Defendant Detroit Free Press" or "Detroit Free Press") is a Michigan corporation and a wholly-owned

subsidiary of Defendant Gannett Co., Inc., that maintains its principal place of business and conducts business in the Eastern District of Michigan.

8. Defendant Gannett Co., Inc. (hereinafter "Defendant Gannett" or "Gannett") is a foreign corporation that conducts business in the Eastern District of Michigan.

9. In or around August 2005, Defendant Gannett purchased the Detroit Free Press from Knight Ridder Inc.

10. The events underlying this Complaint occurred in the Eastern District of Michigan.

11. This Court has federal subject matter jurisdiction pursuant to 28 USC § 1331, 28 USC § 1343, 28 USC § 1367.

12. Pursuant to 28 USC § 1391, venue is proper in this Court.

### Background Facts

13. Defendants' employees who serve as full-time assistant editors, copy editors, designers, photographers, reporters, and web designers are unionized employees and are members of the Newspaper Guild of Detroit (hereinafter, "the Guild"). Defendants pay these employees on an hourly basis.

14. The Guild negotiates bi-weekly pay minimums as well as minimum annual percentage increases for Defendants' employees. However, the Guild does

not negotiate overall pay rates. The amount that Defendants pay an employee above the negotiated minimum is completely based upon Defendants' discretion.

15. In or around Spring 2017, the Guild published a study analyzing pay data for male and female employees of the Detroit Free Press. The study was titled "Sex and Wage Report, Detroit Free Press."

16. To complete the Sex and Wage Report, the Guild relied on pay data from 2013 to 2015. The Guild analyzed data from the following categories of employees: assistant editor, copy editor, designer, photographer, reporter, and web designer.

17. For almost every category of Detroit Free Press employees analyzed, the data reflected that the male median wage was higher than the female median wage. For example, the median wage for male assistant editors is $7.62 higher per hour than the median wage for female assistant editors. The median wage for male photographers is $4.04 higher per hour than the median wage for female photographers. Similarly, the median wage for male reporters is $2.03 higher per hour than the median wage for female reporters.

18. In this study, the Guild also analyzed seniority and hourly wage by sex. Based on the data, female employees' wages grow at a slower rate over time compared to male employees' wages. For example, of employees who have worked for the Detroit Free Press for zero to five years, the male median wage is

$3.85 more per hour than the female median wage. Of the employees who have worked for the Detroit Free Press for 11-15 years, the male median wage is $4.14 more per hour than the female median wage. And of the employees who have worked for the Detroit Free Press for 20 or more years, the male median wage is $8.94 more per hour than the female median wage.

19. The Sex and Wage Report was ultimately published on the Guild's website. *See* Newspaper Guild of Detroit website, https://detroitguild22.files.wordpress.com/2017/06/sex-and-wage-report_free-press_-final-draft.pdf.

20. The Guild also shared the results of this study with Defendants, but, upon information and belief, Defendants were uninterested in resolving the pay disparities.

21. Female employees at the Detroit Free Press, including Plaintiffs, are affected by the stark pay disparities reflected in the Sex and Wage Report.

### Plaintiff Kathleen Galligan

22. Plaintiff Galligan was hired by the Detroit Free Press in September 2002 as an intern photographer. By December 2002, the Detroit Free Press hired Galligan as a full-time photographer.

23. Galligan is a highly skilled and highly qualified photographer.

5:17-cv-13349-JCO-SDD   Doc # 1   Filed 10/13/17   Pg 6 of 18   Pg ID 6

24. Before she pursued a career in photography, Galligan served as an Army medic from 1984 to 1987.

25. Galligan received her Bachelor's Degree in History and English, with High Honors, from Madonna University in May 1991. During and immediately after college, Galligan also took photography courses at various institutions in the Detroit metropolitan area.

26. Galligan served as a full-time photographer for the Dearborn Times Herald from 1992 to 1993.

27. From approximately 1993 to 2001, Galligan continued to photograph events and she completed contract photography work for various clients and organizations such as the Associated Press, Rolling Stone, HBO, MTV, the Chicago Tribune, and the Baltimore Sun.

28. Galligan received a merit scholarship to complete specialized photography training from the College of Creative Studies from 2001 to 2002.

29. After Galligan completed this specialized training, the Detroit Free Press hired her as a photography intern, and then a full-time photographer.

30. From the date of Galligan's hire by the Detroit Free Press, her performance was satisfactory or better.

31. In fact, Galligan has received numerous honors and awards for her work. Galligan received Emmys in 2006 and 2009 for her photography and videography.

32. Galligan has received several other awards from organizations such as the National Press Photographers Association and the Michigan Press Photographers Association.

33. In 2008, Galligan received the prestigious Knight Wallace Fellowship, an international journalism fellowship. While she served as a Fellow, Galligan took leave from the Detroit Free Press in order to complete the fellowship and further enhance her film studies and journalism skills.

34. Defendants have consistently paid Plaintiff Galligan less than similarly situated male photographers who are employed at the Detroit Free Press.

35. In the past three years, Defendants have continued to pay Galligan less than similarly situated male photographers who are employed at the Detroit Free Press.

### Plaintiff Mary Schroeder

36. Plaintiff Mary Schroeder received her Bachelor's Degree in Fine Arts and Photography from Ohio University (in Athens, Ohio) with honors in June 1979.

37. Immediately after graduating from college, Schroeder was hired by the Detroit Free Press in June 1979 as an intern photographer.

38. By September 1979, Schroeder was promoted by the Detroit Free Press to a full-time photographer.

39. Schroeder became a full-time picture editor, or photography editor, in or around 2008. Although Schroeder is the only current full-time picture editor at the Detroit Free Press, assistant editors perform analogous work to Schroeder for the articles published by Defendants.

40. Schroeder is a highly skilled and highly qualified photographer and picture editor. In fact, she is one of the only employees who completes picture editing for the Detroit Free Press.

41. From the date of Schroeder's hire by the Detroit Free Press, her performance was satisfactory or better.

42. In fact, Schroeder has received numerous honors and awards for her work, including but not limited to awards from the National Press Photographers Association, the Michigan Press Photographers Association, the United Press International, and the Pro Football Hall of Fame. Schroeder also received local and national recognition for several of her sports photographs, including her photo of Kirk Gibson from the 1984 World Series.

43. Defendants have consistently paid Plaintiff Schroeder less than similarly situated male photographers and assistant editors who are employed at the Detroit Free Press.

44. In the past three years, Defendants have continued to pay Schroeder less than similarly situated male assistant editors who are employed at the Detroit Free Press.

**Plaintiff Rose Ann McKean**

45. Plaintiff Rose Ann McKean was hired by Defendants in December 1981 and served in a variety of positions until she became a photo editor in 2005, in a full-time position.

46. In or around December 2014, McKean became a designer for Defendants.

47. McKean is a highly skilled and highly qualified designer and picture editor.

48. McKean received her Associate's Degree in Arts in December 1991 from Henry Ford College. McKean is five classes away from graduating with her Bachelor's Degree from the University of Michigan, Dearborn, with a focus on print journalism, English, and sociology.

49. From the date of McKean's hire by the Detroit Free Press, her performance was satisfactory or better.

50. In fact, McKean has received numerous honors and awards for her work. In 2006, the Michigan Press Photographers Association awarded McKean third place in the picture editor of the year category. In 2007, McKean received a Best of Gannett Award for Visual Presentation. McKean has also received additional awards from the National Press Photographers Association, the Detroit Free Press, and the Society for News Design.

51. Defendants have consistently paid Plaintiff McKean less than similarly situated male designers and assistant editors who are employed at the Detroit Free Press.

52. In the past three years, Defendants have continued to pay McKean less than similarly situated male designers who are employed at the Detroit Free Press.

### **Plaintiff Regina H. Boone**

53. Plaintiff Boone was employed by the Detroit Free Press in September 2003 as a full-time photographer.

54. Boone is a highly skilled and highly qualified photographer.

55. Boone received her Bachelor's Degree in Political Science from Spelman College in May 1992.

56. Boone began taking photography courses as an undergraduate student, and continued to hone her photography skills while she worked and traveled internationally after graduating from college.

57. In or around May 1996, Boone began working for the Richmond Free Press, an award winning weekly newspaper in Richmond, Virginia. While employed by the Richmond Free Press, Boone served as a photojournalist and took photography courses at the Virginia Museum of Fine Arts.

58. In May 2003, Boone completed her graduate degree coursework at Ohio University's School of Visual Communication, focusing on photojournalism.

59. Immediately after completing her coursework at Ohio University, Boone was hired by the Detroit Free Press.

60. By the time Boone began working for the Detroit Free Press, she had completed internships with the Commercial Appeal in Memphis, Tennessee, and the Virginian Pilot in Norfolk, Virginia.

61. From the date of Boone's hire by the Detroit Free Press, her performance was satisfactory or better.

62. In fact, Boone has received numerous honors and awards for her work. In 2006, Boone received an Emmy, and in 2010, she received a Dart Award for excellence in photojournalism from the Dart Center for Journalism & Trauma at the Columbia Journalism School. Boone has also received recognition by the

National Newspaper Publishers Association, and has received multiple awards from the Michigan Press Photographers Association and the Virginia Press Photographers Association.

63. Boone also received national recognition for her photography of the Flint water crisis. One of Boone's photographs of a two year old child from Flint was selected as Time Magazine's cover image in February 2016.

64. In December 2016, Defendants laid off Boone, but Boone continued to be paid and remained on Defendants' payroll through June 2017.

65. In 2017, Boone, like Galligan, received the prestigious Knight Wallace Fellowship, an international journalism fellowship. Boone is currently serving as a Fellow to further enhance her journalism skills.

66. Defendants have consistently paid Plaintiff Boone less than similarly situated male photographers who were or are employed at the Detroit Free Press.

67. In the past three years, Defendants paid Boone less than similarly situated male photographers who were or are employed at the Detroit Free Press.

68. On information and belief, Defendants systematically compensate their female employees at a lower rate compared to similarly situated male employees who perform the same or similar work.

12

## **Count I**
### *Violations of the Equal Pay Act*
### *Discrimination*

69. Plaintiffs repeat and reallege all foregoing paragraphs as if they were set forth fully herein.

70. Defendants have discriminated against Plaintiffs within the meaning of the Equal Pay Act of 1963 ("EPA") by providing them with lower pay than similarly situated male colleagues on the basis of their gender, female, even though Plaintiffs performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

71. Plaintiffs are "employee[s]" as defined by 29 USC § 203(e); 29 USC § 206(a); 29 USC § 206(d); 29 CFR § 1620.1.

72. Defendants are "employer[s]" under the EPA, 29 USC § 203(d).

73. Plaintiffs are female employees who received and continue to receive less compensation than similarly situated male employees for performing substantially equal work that requires equal skill, effort, and responsibility, and was/is performed under similar working conditions.

74. Defendants violated the EPA by paying lower wages to Plaintiffs, female employees, than it paid to male employees for equal work that required equal skill, effort, and responsibility and that were/are performed under similar working conditions. *See* 29 USC § 206(d)(1).

75. The term "wages" encompasses all payments made to an employee as remuneration for employment. *See* 29 CFR § 1620.10.

76. The differential in pay between similarly situated male employees and Plaintiffs was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

77. Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the EPA.

78. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Defendants have willfully violated the EPA, a three year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

79. As a result of Defendants' conduct as alleged in this Complaint, Plaintiffs have suffered and continues to suffer harm, including but not limited to: lost earnings and earning capacity, lost career opportunities, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, mental anguish, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of their choice.

## COUNT II
### *Violations of the Elliott-Larsen Civil Rights Act*
### *Discrimination*

80. Plaintiffs repeat and reallege all foregoing paragraphs as if they were set forth fully herein.

81. Defendants have discriminated against Plaintiffs within the meaning of the Elliott-Larsen Civil Rights Act (ELCRA) by discriminating against them with respect to the terms, conditions, and privileges of their employment, including but not limited to compensation, on the basis of their sex, female.

82. At all material times, Plaintiffs were employees, and Defendants were her employers, covered by and within the meaning of the ELCRA. *See* MCL § 37.2201 *et seq*.

83. Plaintiffs' sex was at least one factor in Defendants' decision to compensate Plaintiffs less compared to similarly situated male employees.

84. The differential in pay between similarly situated male employees and Plaintiffs was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to sex.

85. Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the ELCRA.

86. Defendants discriminated against Plaintiffs on the basis of their sex by subjecting them to discriminatory pay, discriminatory denials of bonuses and other

compensation incentives, discriminatory denial of promotions, and other forms of discrimination in compensation in violation of the ELCRA.

87. Defendants, though its agents, representatives, and employees, treated Plaintiffs differently from similarly situated male employees in terms and conditions of employment, based on unlawful consideration of sex.

88. Defendants' actions as described above were intentional and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

89. As a result of Defendants' conduct as alleged in this Complaint, Plaintiffs have suffered and continue to suffer harm, including but not limited to: lost earnings and earning capacity, lost career opportunities, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, mental anguish, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of their choice.

### **Relief Requested**

Plaintiffs demand judgment against Defendants as follows:

A.  Legal Relief:

   1. Compensatory damages in whatever amount Plaintiffs are found to be entitled;

   2. Exemplary damages in whatever amount Plaintiffs are found to

       be entitled;

    3. Punitive damages in whatever amount Plaintiffs are found to be entitled;

    4. Prejudgment interest;

    5. Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

    6. An award of interest, costs, reasonable attorney fees, and expert witness fees.

B. Equitable Relief:

    1. An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants;

    2. An injunction from this Court prohibiting any further acts of wrongdoing or retaliation against Plaintiffs;

    3. An injunction from this Court prohibiting Defendants from engaging in policies, patterns and/or practices that discriminate against female employees because of their gender;

    4. An injunction from this Court requiring Defendants to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions;

    5. An order from this Court requiring Defendants to train all of its managers and supervisors about the Equal Pay Act and sex discrimination in the workplace;

    6. An order from this Court appointing a monitor to ensure that Defendants comply with the injunction provisions of any decree that the Court orders;

    7. Declaratory relief stating that Defendants discriminated against

        Plaintiffs in violation of federal law;

8.    An award of interest, costs and reasonable attorney fees; and

9.    Whatever other equitable relief appears appropriate at the time of final judgment.

                                            /s/Deborah L. Gordon (P27058)
                                            Benjamin I. Shipper (P77558)
                                            Irina L. Vaynerman (0396759)
                                            Attorneys for Plaintiffs
                                            33 Bloomfield Hills Parkway, Suite 220
                                            Bloomfield Hills, Michigan 48304
                                            (248) 258-2500
                                            dgordon@deborahgordonlaw.com
                                            bshipper@deborahgordonlaw.com
                                            ivaynerman@deborahgordonlaw.com

Dated:  October 13, 2017

## JURY DEMAND

    Plaintiffs Kathleen Galligan, Mary Schroeder, Rose Ann McKean, and Regina H. Boone, by their attorneys **Deborah Gordon Law**, hereby demand a trial by jury of all the issues in this cause.

                                            /s/Deborah L. Gordon (P27058)
                                            Benjamin I. Shipper (P77558)
                                            Irina L. Vaynerman (0396759)
                                            Attorneys for Plaintiffs
                                            33 Bloomfield Hills Parkway, Suite 220
                                            Bloomfield Hills, Michigan 48304
                                            (248) 258-2500
                                            dgordon@deborahgordonlaw.com
                                            bshipper@deborahgordonlaw.com
                                            ivaynerman@deborahgordonlaw.com

Dated: October 13, 2017