UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN GALLIGAN, *et al.*,

    Plaintiffs,

v.

DETROIT FREE PRESS, *et al.*,

    Defendants.

Case No. 17-cv-13349
Hon. Matthew F. Leitman

_____/

**ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (ECF #14) AND (2) GRANTING PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO ENGAGE IN A 26(f) CONFERENCE (ECF #26)**

In this action, Plaintiffs Kathleen Galligan, Mary Schroeder, Rose Ann McKean, Regina H. Boone, Susan Mickels and Ann Zaniewski assert that Defendants the Detroit Free Press and Gannett Co., Inc. violated the federal Equal Pay Act of 1963, 29 U.S.C. § 206(d) (the "EPA") and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202 (the "ELCRA") by paying them less than "similarly situated male colleagues on the basis of their gender, female, even though [they] performed similar duties requiring the same skill, effort, and responsibility of male counterparts." (Am. Compl. at ¶118, ECF #9 at Pg. ID 84; *see also id.* at ¶129, Pg. ID 86.) There are currently two motions pending before the Court: Defendants' motion to dismiss Plaintiffs' Amended Complaint (*see* ECF #14) and Plaintiffs' motion to compel Defendants to engage in a Rule 26(f) conference.

1

(*See* ECF #26.) For the reasons explained below, the Court **DENIES** Defendants' motion to dismiss and **GRANTS** Plaintiffs' motion to compel.

I

A[1]

Plaintiffs are employees of the Detroit Free Press, a wholly-owned subsidiary of Gannett. (*See* Am. Compl. at ¶¶ 1, 9, ECF #9 at Pg. ID 64-65.) The Amended Complaint alleges the following facts specific to each Plaintiff and her position:

*1. Kathleen Galligan*

In December 2002, the Detroit Free Press hired Galligan as a full-time photographer. (*See id.* at ¶24, Pg. ID 68.) Galligan's primary duties and responsibilities as a photographer are as follows: "identify newsworthy stories; take and edit photographs and videos; present and edit images and videos; caption photographs or write copy blocks; present images and videos for editors' review; serve as liaisons between the Detroit Free Press and the Community; build and maintain contacts and sources within the community; manage any difficulties and safety issues associated with obtaining newsworthy images and videos in the field." (*Id.* at ¶40, Pg. ID 70.) All photographers employed by the Detroit Free Press have these same primary duties and responsibilities and perform substantially equal work.

---

[1] The following facts are alleged in Plaintiffs' Amended Complaint and are assumed to be true for purposes of this Order.

(*See id.* at ¶¶ 39-40, Pg. ID 70.) In addition, the work performed by all Detroit Free Press photographers requires equal skill, effort, and responsibility and is performed under similar working conditions. (*See id.* at ¶39, Pg. ID 70.)

Galligan holds a Bachelor's Degree in History and English from Madonna University. (*See id.* at ¶27, Pg. ID 68.) She has taken photography courses and completed specialized photography training. (*See id.* at ¶¶ 27, 30, Pg. ID 68-69.) Galligan has also received a number of honors and awards for her work. (*See id.* at ¶33, Pg. ID 69.) Galligan's performance, skills, experience, training, qualifications, and seniority are equal or substantially equal to those of male photographers at the Detroit Free Press. (*See id.* at ¶38, Pg. ID 70.) Despite that fact, the Detroit Free Press has consistently paid Galligan less than similarly-situated male photographers. (*See id.* at ¶¶ 36-37, Pg. ID 69-70.)

*2. Mary Schroeder*

In 1979, the Detroit Free Press hired Schroeder as a photographer. (*See id.* at ¶41, Pg. ID 71.) Schroeder assumed the position of full-time picture editor, or photography editor, in or around 2008. (*See id.* at ¶44, Pg. ID 71.) Schroeder's work is analogous to the work of an assistant editor. (*See id.*) Schroeder's primary duties and responsibilities are as follows: "generate newsworthy ideas and topics for online and print content, assign a staff member to complete the assignment, coach the staff member to complete the assignment, troubleshoot with the staff member if any

3

difficulties arise when completing the assignment, edit the content, prepare the content for publication online and in print, and develop budgets and ensure that budget requirements are met." (*Id.* at ¶52, Pg. ID 72-73.) All assistant editors employed by the Detroit Free Press have these same primary duties and responsibilities and perform substantially equal work. (*See id.* at ¶¶ 51-52, Pg. ID 72.) In addition, the work performed by all Detroit Free Press assistant editors requires equal skill, effort, and responsibility and is performed under similar working conditions. (*See id.* at ¶51, Pg. ID 72.)

Schroeder holds a Bachelor's Degree in Fine Arts and Photography from Ohio University in Athens, Ohio. (*See id.* at ¶41, Pg. ID 71.) She has also received a number of honors and awards for her work. (*See id.* at ¶47, Pg. ID 71.) Schroeder's performance, skills, experience, training, qualifications, and seniority are equal or substantially equal to those of male assistant editors at the Detroit Free Press. (*See id.* at ¶50, Pg. ID 72.) Despite that fact, the Detroit Free Press has consistently paid Schroeder less than similarly-situated assistant editors. (*See id.* at ¶¶ 48-49, Pg. ID 72.)

*3. Rose Ann McKean*

The Detroit Free Press hired McKean in 1981. (*See id.* at ¶53, Pg. ID 73.) McKean attained the position of full-time photo editor in 2005, and she became a designer in December 2014. (*See id.* at ¶¶ 53-54, Pg. ID 73.) McKean's primary

duties and responsibilities as a designer are as follows: "use organizational and creative or aesthetic skills sets to design pages of the newspaper, place stories, and place and select photographs and headlines. Designers work closely with editors of various departments and photo editors in the earlier stages of the design process." (*Id.* at ¶63, Pg. ID 75.) All designers employed by the Detroit Free Press have these same primary duties and responsibilities and perform substantially equal work. (*See id.* at ¶¶ 62-63, Pg. ID 74-75.) In addition, the work performed by all Detroit Free Press designers requires equal skill, effort, and responsibility and is performed under similar working conditions. (*See id.* at ¶ 62, Pg. ID 74.)

McKean holds an Associate's Degree in Arts from Henry Ford College and has almost attained her Bachelor's Degree from the University of Michigan, Dearborn, with a focus on print journalism, English, and sociology. (*See id.* at ¶56, Pg. ID 73.) She has also received a number of honors and awards for her work. (*See id.* at ¶58, Pg. ID 73.) McKean's performance, skills, experience, training, qualifications, and seniority are equal or substantially equal to those of male designers at the Detroit Free Press. (*See id.* at ¶61, Pg. ID 74.) Despite that fact, the Detroit Free Press has consistently paid McKean less than similarly-situated male designers and assistant editors. (*See id.* at ¶¶ 59-60, Pg. ID 74.)

*4. Regina H. Boone*

The Detroit Free Press hired Boone as a full-time photographer in September 2003. (*See id.* at ¶64, Pg. ID 75.) In December 2016, Defendants laid off Boone, but she remained on Defendants' payroll through June 2017. (*See id.* at ¶75, Pg. ID 76.) Boone's primary duties and responsibilities as a photographer were as follows: "identify newsworthy stories; take and edits photographs and videos; present and edit images and videos; caption photographs or write copy blocks; present images and videos for editors' review; serve as liaisons between the Detroit Free Press and the community; build and maintain contacts and sources within the community; manage any difficulties and safety issues associated with obtaining newsworthy images and videos in the field." (*Id.* at ¶81, Pg. ID 77.) All photographers employed by the Detroit Free Press have these same primary duties and responsibilities and perform substantially equal work. (*See id.* at ¶¶ 80-81, Pg. ID 77.) In addition, the work performed by all Detroit Free Press photographers requires equal skill, effort, and responsibility and is performed under similar working conditions. (*See id.* at ¶80, Pg. ID 77.)

Boone holds a Bachelor's Degree in Political Science from Spelman College and a graduate degree (with a focus on photojournalism) from Ohio University's School of Visual Communication. (*See id.* at ¶¶ 66, 69, Pg. ID 75.) She has also received a number of honors and awards for her work. (*See id.* at ¶73, Pg. ID 76.)

6

Boone's skills, experience, training, qualifications, and seniority were equal or substantially equal to those of male photographers at the Detroit Free Press. (*See id.* at ¶79, Pg. ID 77.) Despite that fact, the Detroit Free Press consistently paid Boone less than similarly-situated male photographers. (*See id.* at ¶¶ 77-78, Pg. ID 77.)

*5. Susan Mickels*

The Detroit Free Press hired Mickels in 1984. (*See id.* at ¶82, Pg. ID 78.) Mickels joined the Food section in 1995 and became a reporter in 2011. (*See id.* at ¶83, Pg. ID 78.) Mickels' primary duties and responsibilities as a reporter are as follows: "gather and uncover news and information; conduct research; interview individuals; identify and spot stories and trends; pitch story ideas to editors; pursue story assignments given by editors; write stories; establish and maintain contacts with sources; format stories for online publication; and take photos and videos when needed." (*Id.* at ¶99, Pg. ID 80-81.) All reporters employed by the Detroit Free Press have these same primary duties and responsibilities and perform substantially equal work. (*See id.* at ¶¶ 98-99, Pg. ID 80-81.) In addition, the work performed by all Detroit Free Press reporters requires equal skill, effort, and responsibility and is performed under similar working conditions. (*See id.* at ¶98, Pg. ID 80.)

Mickels has taken a number of collegiate courses in culinary arts, nutrition, and journalism at Henry Ford Community Colleges and the University of Michigan-Dearborn; has received a Nutrition Certification from Monroe Community College;

7

and has attended the Culinary Institute of America's course in food styling. (*See id.* at ¶88, Pg. ID 79.) Mickels is also a published author, and she has received a number of honors and awards related to her work. (*See id.* at ¶¶ 90-93, Pg. ID 79-80.) Mickels' performance, skills, experience, training, qualifications, and seniority are equal or substantially equal to those of male reporters at the Detroit Free Press. (*See id.* at ¶97, Pg. ID 80.) Despite that fact, the Detroit Free Press has consistently paid Mickels less than similarly-situated male reporters. (*See id.* at ¶¶ 95-96, Pg. ID 80.)

*6. Ann Zaniewski*

The Detroit Free Press hired Zaniewski as a full-time reporter in August 2012. (*See id.* at ¶100, Pg. ID 81.) Zaniewski's primary duties and responsibilities as a reporter are as follows: "gather and uncover news and information; conduct research; interview individuals; identify and spot stories and trends; pitch story ideas to editors; pursue story assignments given by editors; write stories; establish and maintain contacts with sources; format stories for online publication; and take photos and videos when needed." (*Id.* at ¶115, Pg. ID 83.) All reporters employed by the Detroit Free Press have these same primary duties and responsibilities and perform substantially equal work. (*See id.* at ¶¶ 114-15, Pg. ID 83.) In addition, the work performed by all Detroit Free Press reporters requires equal skill, effort, and responsibility and is performed under similar working conditions. (*See id.* at ¶114, Pg. ID 83.)

Zaniewski holds a Bachelor's Degree in Journalism with Honors and a Communication Minor from Oakland University. (*See id.* at ¶103, Pg. ID 81.) Zaniewski has also received a number of honors and awards related to her work. (*See id.* at ¶¶ 107, 110, Pg. ID 81-82.) Zaniewski's performance, skills, experience, training, qualifications, and seniority are equal or substantially equal to those of male reporters at the Detroit Free Press. (*See id.* at ¶113, Pg. ID 83.) Despite that fact, the Detroit Free Press has consistently paid Zaniewski less than similarly-situated male reporters. (*See id.* at ¶¶ 111-12, Pg. ID 83.)

**B**

On October 13, 2017, Plaintiffs Galligan, Schroeder, McKean, and Boone filed a Complaint in this Court against Defendants. (*See* Compl., ECF #1.) These Plaintiffs alleged that Defendants violated the EPA and ELCRA when they "discriminat[ed] against Plaintiffs on the basis of their gender by providing them with less compensation than similarly situated male employees performing the same or similar duties." (*See id.* at ¶2, Pg. ID 2.)

On November 8, 2017, Defendants moved to dismiss the Complaint on the ground that it lacked allegations relating to the Plaintiffs' "actual work performed, their compensation, or the work or compensation of any alleged male comparators."

(Motion to Dismiss, ECF #7 at Pg. ID 41.) In lieu of responding to Defendants' motion, Plaintiffs filed an Amended Complaint.[2] (*See* Am. Compl., ECF #9.)

In the Amended Complaint, Plaintiffs again alleged that Defendants violated the EPA and ELCRA, and Plaintiffs added new allegations (many of which are set forth above in Section I(A)) concerning their pay, their actual work responsibilities and duties, and the pay and duties of their male comparators. (*See id.*) The Amended Complaint also repeated allegations from the original Complaint about a pay study (titled the "Sex and Wage Report") conducted by the Newspaper Guild of Detroit (the "Guild"), the union that represents the Detroit Free Press' full-time assistant editors, copy editors, designers, photographers, reporters, and web designers. (*See id.* at ¶15, Pg. ID 66.) In the Sex and Wage Report, the Guild analyzed pay data from 2013-2015 for the following categories of employees at the Detroit Free Press: assistant editor, copy editor, designer, photographer, reporter, and web designer. (*See id.* at ¶18, Pg. ID 66.) The Guild found that the male median wage was higher than the female median wage in almost every one of those employment categories. (*See id.* at ¶19, Pg. ID 66.) The Guild also concluded that female employees' wages grew at a slower rate over time than male employees' wages. (*See id.* at ¶20, Pg. ID 67.) Plaintiffs contend that the Detroit Free Press and Gannett are aware of the Sex

---

[2] The Amended Complaint added Mickels and Zaniewski as Plaintiffs in this action.

and Wage Report's findings but are uninterested in resolving the pay disparities described in that report. (*See id.* at ¶22, Pg. ID 67.)

On November 29, 2017, Defendants filed a motion to dismiss the Amended Complaint. (*See* ECF #14.) That motion is fully briefed and ready for decision.

On February 26, 2018, Plaintiffs filed a motion to compel Defendants to engage in a Federal Rule of Civil Procedure 26(f) conference. (*See* ECF #26.) Plaintiffs attached to the motion correspondence from defense counsel indicating that Defendants would participate in a Rule 26(f) conference if and when the Court denied the motion to dismiss the Amended Complaint. (*See* ECF #26-2 at Pg. ID 224.)

The Court has determined that it may properly resolve Defendants' motion to dismiss and Plaintiffs' motion to compel without a hearing. *See* L.R. 7.1(f).

## II

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is

liable for the alleged misconduct. *See id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III

### A

Plaintiffs have asserted a viable EPA claim against Defendants. "To prove an employer has violated the Equal Pay Act, a plaintiff must show that the employer paid an employee of the opposite sex different wages for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 881 (6th Cir. 2013) (quotations omitted). Plaintiffs' Amended Complaint plausibly alleges each of these elements. It first describes Plaintiffs' job duties with some particularity. It then asserts that all employees holding the same

positions as Plaintiffs perform those same duties under similar working conditions; that the duties performed by Plaintiffs and their counterparts holding the same positions require equal skill; that Plaintiffs' qualifications are equal to or better than their male counterparts who perform the same jobs with the same duties; and that Plaintiffs have been paid less than their similarly-situated male counterparts for the same work. That is enough to state an EPA claim on which relief can be granted. *See, e.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (reversing dismissal of EPA claim where plaintiff alleged "that she is female," "facts regarding her . . . salary, as well as the salaries of other similarly situated male employees," and "that she was paid less than the similarly situated male employees [in part] . . . because she was a woman"); *Baker v. Ruan Transp. Corp.*, 2009 WL 200769, at *1, *3 (E.D. Tenn. Jan. 27, 2009) (concluding that plaintiff stated a viable EPA claim where she alleged "that males who were offered and/or received the full-time dispatcher position were paid in excess of that which was paid to [the plaintiff] in the dispatcher position she occupied for the same job duties" (quotations omitted)).

Defendants counter that Plaintiffs' EPA claim does not meet the pleading standard for EPA claims applied by the United States Court of Appeals for the Sixth Circuit in *Unger v. City of Mentor*, 387 Fed. App'x 589 (6th Cir. 2010). In *Unger*, the Sixth Circuit affirmed dismissal of a plaintiff's EPA claim. But the complaint in *Unger* bore scant resemblance to Plaintiffs' Amended Complaint in this case. The

complaint in *Unger* "cite[d] nothing more than the claim's legal elements, neglecting to provide any factual basis in support." 387 Fed. App'x at 595. In sharp contrast here, as set forth in detail above, Plaintiffs' Amended Complaint includes factual allegations concerning Plaintiffs' duties and qualifications, the duties and qualifications of Plaintiffs' male counterparts, the conditions under which Plaintiffs and their male counterparts work, and the pay disparities between Plaintiffs and their male counterparts. Accordingly, *Unger* does not support dismissal of Plaintiffs' EPA claim.

Similarly, this Court's decision in *Hall v. Int'l House of Pancakes, Inc.*, 2005 WL 1684150 (E.D. Mich. July 15, 2005), on which Defendants also rely, does not suggest that Plaintiffs' EPA allegations are deficient. In *Hall*, another Judge of this Court dismissed a *pro se* plaintiff's constitutional and EPA claims because the plaintiff did not "allege a specific federal constitutional right that has been violated, membership in a federally protected class, different treatment with respect to other similarly situated employees not members of plaintiff's protected class, or the payment of disparate wages as between plaintiff and a similarly situated [defendant] employee who is not a member of plaintiff's protected class." 2005 WL 1684150, at *2. *Hall* is simply inapposite given the factual allegations that Plaintiffs have made in their Amended Complaint.

Defendants also argue that Plaintiffs' EPA claims suffer from "a misplaced reliance on position titles" to satisfy the requirement that Plaintiffs' respective skills, efforts, and responsibilities are substantially equal to their similarly-situated male colleagues. (Mot. to Dismiss, ECF #14 at Pg. ID 119.) The Court disagrees. As noted above, Plaintiffs do not merely cite job titles. Instead, Plaintiffs list specific responsibilities performed by employees holding various job titles, and Plaintiffs' EPA claims are viable because they include "sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job *content* was substantially equal." *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 256 (2d Cir. 2014) (emphasis in original) (quotation marks omitted) (identifying one of the essential components of a viable EPA claim).[3]

Moreover, the primary cases on which Defendants rely in support of their job-title-only argument are distinguishable. For instance, in *Port Authority of New York & New Jersey*, the United States Court of Appeals for the Second Circuit affirmed dismissal of an EPA claim brought by the EEOC because – unlike Plaintiffs' EPA

---

[3] Defendants also rely on a number of cases granting summary judgment against plaintiffs on EPA claims. *See, e.g.*, *Foco v. Freudenberg-NOK General Partnership*, 892 F. Supp. 2d 871, 878 (E.D. Mich. 2012); *Carey v. Foley & Lardner*, 577 Fed. App'x 573, 580 (6th Cir. 2014). But those decisions rested upon the insufficiency of the plaintiff's evidence and did not purport to evaluate the sufficiency of the plaintiff's pleadings. Thus, those decisions are not especially instructive here.

claim here – it did not contain *any* factual allegations concerning the work actually performed by the various employees at issue. The court explained:

> First, the EEOC alleges in its complaint only that the Port Authority paid its female nonsupervisory attorneys less than its male nonsupervisory attorneys "for substantially equal work," that these attorneys had "the same job code," and that the disparity in pay "cannot be attributed to factors other than sex." The EEOC's bald recitation of the elements of an EPA claim and its assertion that the attorneys at issue held "the same job code" are plainly insufficient to support a claim under the EPA. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (deeming a "formulaic recitation of the elements of a cause of action" insufficient to survive a motion to dismiss); *Tomka* [*v. Seiler Corp.*]*,* 66 F.3d [1295,] 1310 [(2d. Cir. 1995)] (rejecting reliance on "job title or description" alone under the EPA).

*Id.* at 256.[4]

---

[4] The Second Circuit in *Port Authority of New York & New Jersey* stressed that the absence of allegations concerning the content of the relevant job was especially noteworthy because the EEOC had performed a three-year investigation before filing the EPA claim:

> Simply put, the EEOC has not alleged a single nonconclusory fact supporting its assertion that the claimants' and comparators' jobs required "substantially equal" skill and effort. That the EEOC's failure to include such factual allegations followed a three-year investigation into the Port Authority's pay practices—an investigation conducted with the Port Authority's cooperation—is of some note. The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. Here, the EEOC had ready access to Port Authority documents and

16

Defendants' reliance on *Noel-Batiste v. Virginia State University*, 2013 WL 499342 (E.D. Va. Feb. 7, 2013), and *Spencer v. Virginia State University,* 224 F. Supp. 2d. 449, 457 (E.D. Va. 2016), is likewise misplaced.  In *Noel-Batiste*, the district court dismissed the plaintiff's EPA claim because the complaint lacked *any* "reference to the skills, effort, responsibilities required of her as an 'Associate Professor' or to those of the male professors who she alleges receive a greater salaries." 2013 WL 499342, at *6.  In *Spencer v. Virginia State University*, the district court dismissed the plaintiff's EPA claim because the plaintiff did "not allege with specificity the responsibilities and requirements of her own position" and how those compared to her alleged male colleagues. 224 F. Supp. 2d. 449, 457 (E.D. Va. 2016).  But once again, Plaintiffs' Amended Complaint includes allegations regarding Plaintiffs' respective duties and responsibilities and those of their male counterparts.  Defendants have not cited any decision in which a federal court has

> employees, including to the claimants asserting EPA violations, yet the EEOC failed—in fact, repeatedly rejected the need—to allege any factual basis for inferring that the attorneys at issue performed "substantially equal" work.

*Port Auth. of New York & New Jersey*, 768 F.3d at 258.  Unlike the EEOC, Plaintiffs here have not had an opportunity to conduct their own detailed investigation into Defendants' pay practices.  This difference further undermines Defendants' reliance upon *Port Auth. of New York & New Jersey.*

dismissed an EPA claim that mirrors the claim asserted by Plaintiffs in their Amended Complaint.

Finally, Defendants dispute Plaintiffs' allegations that their work is similar to their alleged male comparators. Defendants insist that "it is common sense that there are different news departments, covering different types of information and events with different levels of importance" and that "[w]ithin those departments there are different levels of skills and responsibilities." (Mot. to Dismiss, ECF #14 at Pg. ID 121.) But this argument is an attack on the truth of Plaintiffs' allegations and is not appropriate at this stage in the proceedings. *See Baker,* 2009 WL 200769, at *3 ("On a motion to dismiss [an EPA claim], the Court must accept as true [plaintiff's] allegations that she performed the 'identical' or the 'same job duties' as those with whom she seeks to compare herself."). There may well be some force to Defendants' contention that there are important differences in the skills and responsibilities of the various reporters, designers, photographers, and editors at the Detroit Free Press, and the Court will carefully consider Defendants' position if presented in a later motion for summary judgment. But at this point, the Court declines to dismiss Plaintiffs' EPA claim.

**B**

The Court likewise declines to dismiss Plaintiffs' ELCRA claim. Defendants contend that "the same reasons compelling dismissal of Plaintiffs' EPA claim" also

compel dismissal of Plaintiffs' ELCRA claim because the two claims are "nearly identical." (Mot. To Dismiss, ECF #14 at Pg. ID 128.) But, as explained above, the reasons offered by Defendants do not compel dismissal of the EPA claim, and therefore those reasons do not compel dismissal of the allegedly-identical ELCRA claim.

## C

In sum, Plaintiffs have plausibly alleged that the Defendants violated the EPA and ELCRA. Defendants' motion to dismiss is therefore denied.

## IV

Because the Court denies Defendants' motion to dismiss, Defendants are directed to engage in the Rule 26(f) conference as required by the Federal Rules of Civil Procedure. Accordingly, Plaintiffs' motion to compel is granted.

## V

For the reasons stated above, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss the Amended Complaint (ECF #14) is **DENIED** and Plaintiffs' motion to compel Defendants to engage in a 26(f) conference (ECF #26) is **GRANTED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: March 6, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 6, 2018, by electronic means and/or ordinary mail.

                                                   s/Holly A. Monda  
                                                   Case Manager  
                                                   (810) 341-9764